THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BRUNO
LISA BRUNO, et al.,

    Plaintiffs

v.             3:09-CV-874
              (JUDGE MARIANI)
BOZZUTO'S, INC.,

    Defendant

## MEMORANDUM

### I. Summary of Facts and Procedural Background

After filing their initial Complaint (Doc. 1), Plaintiffs filed an Amended Complaint (Doc. 8). Defendant filed an Answer (Doc. 10) including counterclaims, to which Plaintiffs replied (Doc. 12). Plaintiffs then moved to file a Second Amended Complaint to add Bruno's Market II, Inc. as a plaintiff. (Doc. 54). The issue was fully briefed, and Judge Munley granted the motion (Doc. 62). Plaintiffs then filed their Second Amended Complaint (Doc. 63).

The Second Amended Complaint (SAC) sets forth five counts: (1) breach of contract, (2) promissory estoppel, (3) negligence and negligent misrepresentation, (4) fraudulent misrepresentation, and (5) punitive damages. (*Id.*) Plaintiffs allege that in May 2007, the parties entered a contract whereby Defendant accepted Plaintiffs' supermarket into its purchase/supply network. (*Id.* at ¶ 7). Previously, Plaintiffs were supplied by Associated Wholesalers, Inc. (AWI), with whom it had a purchase supply agreement. (*Id.* at ¶¶ 5, 19). As

1

part of the alleged contract, Defendant agreed to pay off the $380,000 Plaintiffs owed to AWI. (*Id.* at ¶¶ 18-19). Defendant then removed AWI's equipment and re-tagged inventory at Plaintiffs' store with Defendant's bar codes. (*Id.* at ¶ 25). However, once AWI learned that Plaintiffs planned to leave AWI for a competitor, it threatened to sue Defendant for tortious interference with contract, as Plaintiffs warned Defendant would happen. (*Id.* at ¶¶ 21-22, 26). Defendant then allegedly abandoned its contract with Plaintiffs, leaving them stranded with Defendant's equipment that could not order inventory from AWI, and Defendant's bar-coded inventory, which had to be rung up manually. (*Id.* at ¶ 28). Plaintiffs assert, *inter alia*, lost profits, loss of inventory, and loss of goodwill. (*Id.* at ¶ 31).

In their tort claims, Plaintiffs argue that by removing AWI's machines and bar-codes, Defendant "had overmastering dominance on its part and weakness, dependence, and justifiable trust on the part of Plaintiffs." (*Id.* at ¶ 38). Defendant also "negligently refused to supply [Plaintiffs] with consigned merchandise," which "was a substantial part of Bozzuto's contract with Bruno's Market." (*Id.* at ¶ 40). "Bozzuto's carelessly and negligently added the requirement that Plaintiffs present Bozzuto's with a certified check in advance of Bozzuto's shipping merchandise to plaintiffs, a condition contrary to the original contract between the parties." (*Id.* at ¶ 41). "At all times . . . Defendant misrepresented to Plaintiffs that Bozzuto's would complete its contract with Plaintiffs." (Id. at ¶ 43). The Defendant had direct dealings with Plaintiffs' bank "for the mutual benefit of Plaintiffs and Defendant" and because of those dealings, the "lender became aware that Bruno's had no supplier and, therefore, did not have sufficient financial ability to justify financing." (*Id.* at ¶¶ 54, 55).

During the course of discovery, Defendant sought original paper copies of invoices, trial balances, income statements, and balance sheets. Plaintiffs admitted that they had thrown out the paper copies but insisted the records still existed in electronic form with AWI. (Doc. 94, Ex. D, Affidavit of L. Bruno, at 43, 52:19-53:6). Defendant filed a motion for sanctions for spoliation of evidence and sought an award of summary judgment as appropriate relief. (Doc. 94).

For the reasons that follow, the Court will deny Defendant's Motion to Dismiss Bruno's Market II, Inc. as a Plaintiff (Doc. 64), grant Defendant's Motion to Dismiss Counts III, IV, and V of the SAC (Doc. 113), and grant in part and deny in part Defendant's Motion for Sanctions for Spoliation of Evidence (Doc. 94).

## II. Analysis

### A. Defendant's Motion to Dismiss Bruno's Market II, Inc.

On motions to dismiss, courts "must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them from the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Defendant previously had objected to the addition of Bruno's Market II, Inc. because according to the SAC, the alleged breach of contract had occurred sometime in May 2007, and Bruno's Market II, Inc. had not been formed until August 2007. (Doc. 58). Therefore, according to Defendant, there could be no privity of contract between Bruno's Market II, Inc. and Defendant. However, Judge Munley had already heard this argument before granting Plaintiffs' motion to file a SAC. His reason for granting the motion was "for the purposes of better calculating the plaintiffs' alleged damages." (Doc. 62).

3

The Court agrees that Bruno's Market II, Inc. is an appropriate plaintiff and also relies on the following reasons.

The SAC states that "Bruno's Market II came into existence on or about August 2007, when Bruno's Market reopened under the name, Bruno's Market II." The two businesses also share the same address (401 Kennedy Boulevard, Pittson, PA 18640). (Doc. 63, ¶¶ 3, 4). Though a corporation changes its name, its identity does not change. *Gen. Teamsters Union v. Bill's Trucking, Inc.*, 493 F.2d 956 (3d. Cir. 1974). Viewing the assertions in the SAC most favorably to Plaintiffs, they are claiming that Bruno's Market II, Inc. is the same entity as Bruno's Market, Inc., so the privity of contract issue is moot. If the two corporations are the same entity, or if one is a successor to the other (i.e., there is substantial continuity of ownership and operation), then Bruno's Market II, Inc. is an appropriate party to the case, and if damages are warranted, its presence is essential to their calculation. Defendant's motion to dismiss is denied accordingly.

### B. Defendant's Motion to Dismiss Counts III, IV, and V

Defendant also moved to dismiss Counts III, IV, and V of the SAC, asserting the "gist of the action" doctrine,[1] failure to plead the required legal elements of each tort, and violation of the *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009) pleading standard.[2] The Court finds the "gist of the action" doctrine alone to be an appropriate basis for granting Defendant's

---

[1] Because Defendant did not file an Answer in response to the SAC but filed two motions to dismiss instead, the Court will consider this motion (Doc. 113) as a motion for judgment on the pleadings. *Turbe v. Gov't of the Virgin Isles*, 938 F.2d 427, 428 (3d. Cir. 1991) ("Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings. In this situation, we apply the same standards as under Rule 12(b)(6).").

[2] The Pennsylvania Supreme Court has neither recognized the "gist of the action" doctrine nor rejected it, but a number of Pennsylvania Superior courts and federal courts have applied it to cases arising under Pennsylvania law.

4

motion. The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc., v. Elias/Savion Adv., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements.").

The doctrine bars tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007). The court in *eToll* set forth a comprehensive analysis of several state and federal cases regarding the "gist of the action" doctrine.[3] After reviewing the cases, the court concluded that the cases hinged on how closely connected the

---

[3] In *Galdieri v. Monsanto Co.*, 2002 U.S. Dist. Lexis 11391 (E.D. Pa. May 2, 2002), the plaintiffs alleged that their employer fraudulently induced them to stay at their jobs by promising long-term incentive compensation programs "as required by their employment contracts." *Id.* at 34. The defendant did not do so, and the plaintiffs alleged that it had committed fraud because it never intended to create these compensation. The court held that the doctrine barred the fraud claims because they were "intertwined" with the breach of contract claims." *Id.* In *Werner Kammann Maschinenfabrik, GmbH, v. Max Levy Autograph, Inc.*, 2002 WL 126634 (E.D. Pa. Jan. 31, 2002), the plaintiff bought a furnace from the defendant, who assured the plaintiff that certain heating elements came with the furnace. However, the furnace lacked the promised components, and the defendant refused to correct its mistake. The plaintiff alleged negligent and intentional misrepresentation in addition to breach of contract claims, but the court dismissed the tort claims because "the duties allegedly breached were created and grounded in the contract itself." *Id.* at 6. In *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826 (E.D. Pa. 2000), the plaintiff purchased defective software from the defendant. Despite the defendant's assurances that it would work, the plaintiff never got the software operational. The plaintiff asserted fraud because the seller "strung along" the buyer with repeated promises the software would work. *Id.* at 833. However, the court found that the contract was not collateral to the fraud claim, but rather "at the heart" of it. *Id.* at 834. In *Factory Mkt. v. Schuller Int'l*, 987 F. Supp. 387 (E.D. Pa. 1997), the defendant agreed to repair plaintiff's leaky roof. However, after the repairs, the roof continued to leak. The court dismissed the plaintiff's tort claims because "without the contract, the plaintiff would have no claim at all." 811 A.2d at 19. Thus, there was no independent duty from which a tort could arise. The *eToll* court did identify one case in which a fraud action was not barred by the doctrine, but the facts of that case are not similar to ours. *Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) (holding that promises of a future business relationship "not contemplated by the sales contract" would not be barred by the doctrine).

alleged fraud was to the performance of contractual obligations. If the tort and contract counts were closely intertwined, "then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties." *Id.* at 19.[4] Relying on these cases, the court determined that the "gist of the action" doctrine barred the tort claims in that case. *Id.* at 20-21.

In *eToll*, the plaintiff had developed a product called "e-mail 97," which the defendant contracted to market and advertise. In its complaint, the plaintiff alleged that the defendant charged for services not rendered, inflated charges instead of billing at cost, did not disclose cheaper alternatives, etc. The court found that "all of these alleged acts of fraud arose in the course of the parties' contractual relationship," and the "fraud claims [were] inextricably intertwined with the contract claims." *Id.* at 21.

In this case, Plaintiffs' tort counts arise solely from contractual duties, so the "gist of the action" doctrine applies. Plaintiffs claim that Defendant "negligently refused to supply [Plaintiffs] with consigned merchandise," which "*was a substantial part of Bozzuto's contract with Bruno's Market.*" (Doc. 63, ¶40) (emphasis added). "Bozzuto's carelessly and negligently added the requirement that Plaintiffs present Bozzuto's with a certified check in advance of Bozzuto's shipping merchandise to plaintiffs, *a condition contrary to the original contract between the parties.*" (*Id.* at ¶ 41) (emphasis added). "At all times . . . Defendant misrepresented to

---

[4] *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329 (E.D. Pa. 2003) (distinguishing "fraud in the inducement" claims, which would not be barred by the doctrine (unless the contract at issue is fully integrated) and "fraud in the performance" claims, which would be barred).

6

Plaintiffs that Bozzuto's would *complete its contract with Plaintiffs.*" (*Id.* at ¶ 43) (emphasis added). The fraudulent misrepresentation claims rely on the same set of assertions as the negligence and negligent misrepresentation claims. Central to Plaintiffs' tort claims is Defendant's alleged removal of AWI's ordering machine and computer, as well as Defendant's re-tagging of inventory. However, this allegation was a part of Plaintiffs' breach of contract claim, as well. (*Id.* at ¶ 25). Plaintiffs cannot have it both ways on the same set of facts.[5] The alleged breach of contract is "at the heart of" this case, not collateral to it, and any alleged promises on Defendant's part to complete the contract, or alleged failure of Defendant to fulfill any duty owing to Plaintiff, would arise out of obligations grounded in that contract.

Plaintiffs argue that a special or confidential relationship existed between the parties, such that Defendant owed a duty to Plaintiffs independent of the contract, citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d. Cir. 1995). Plaintiffs assert that Defendant's duty to Plaintiffs arose when it re-tagged Plaintiffs' inventory and removed AWI's equipment from Plaintiffs' store. Even assuming that the removal and re-tagging were independent of the contract's terms, there is no special or confidential relationship here. After *Duquesne* was decided, *eToll* stated that parties to an arms-length business contract could not be in a "special relationship."[6] 811 A.2d 10, 23 ("If parties to routine arms-length commercial contracts . . . were held to have a 'special relationship,' virtually every breach of such a contract

---

[5] Because the Court determines that Plaintiffs pled the removal of AWI equipment and re-tagging of AWI merchandise as both a part of the contract and the basis of the tort counts, the Court considers it unnecessary to determine whether reliance on Exhibit B to Defendant's motion to dismiss (Doc. 113) is appropriate. Therefore, the Court does not consider the exhibit in its decision on this motion.

[6] The Superior Court defined "special relationship" as "one involving confidentiality, the repose of special trust or fiduciary responsibilities." *Id.* at 22.

7

would support a tort claim.").[7]  The court acknowledged that fiduciary duties could extend beyond contractual duties (e.g., in a partnership), and would not be barred by the doctrine, but such duties did not exist in the arms-length transaction at issue.  Moreover, Defendant persuasively argues that if such a special or confidential relationship existed, then the proper action would be breach of fiduciary duty, not negligent or fraudulent misrepresentation.[8]

Finally, Plaintiffs contended that Defendant interfered with their ability to obtain refinancing (*Id.* at ¶ 42) because the Defendant had direct dealings with Plaintiffs' bank "for the mutual benefit of Plaintiffs and Defendant" and the "lender became aware that Bruno's had no supplier and, therefore, did not have sufficient financial ability to justify financing." (*Id.* at ¶¶ 54, 55).  This is the only statement that might suggest a cause of action other than breach of contract.  However, Plaintiffs still have not identified what independent duty that would give rise to such an action, and the other statements in support of the alleged torts are inextricably intertwined with the breach of contract allegations.  The Court finds that the "gist of the action" doctrine applies and will thus dismiss Counts III and IV of the SAC.  Because Plaintiffs cannot recover punitive damages on a breach of contract or promissory estoppel theory, the Court also dismisses Count V of the SAC. *Ash v. Continental Ins. Co.*, 932 A.2d 877 (Pa. 2007).

## C. Defendant's Motion for Sanctions for Spoliation of Evidence

---

[7] *Id.* at 24. Plaintiff also cited to *Fulton Bank v. UBS Sec.*, 2011 U.S. Dist. LEXIS 128820, at *54 (E.D. Pa. Nov. 7, 2011), but *Fulton* said the elements establishing a fiduciary relationship were "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." 811 A.2d at 21. Plaintiffs have not met the pleading standards to establish a fiduciary relationship.

[8] Defendant cites *Michael S. Rulle Family Dynasty Trust v. AGL Life Assur. Co.*, 2010 U.S. Dist. LEXIS 93955, *6-9 (E.D. Pa. Sep. 8, 2010)(listing many federal and state cases covering Pennsylvania law on this tort).

A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994). The duty arises whenever there is "(1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation." *Id.* The breach of contract allegedly occurred in May 2007. Plaintiff Lisa Bruno testified at her deposition that at the time of the alleged breach, she was already contemplating litigation. (Doc. 94, Ex. D, 3/29/11, at 9:5-15). At this time, Plaintiffs' duty to preserve evidence was triggered. She and her husband moved to California in August or September of 2008. (Doc. 94, Ex. D, 3/28/11, at 53:4-6). Before they left, they destroyed all paper copies of invoices, balance sheets, income statements, and trial balances. (*Id.* at 52:19-53:6). Their rationale was that there was no storage space for all of the documents, and it was redundant to keep them because online copies were available through RORC and there were also records on the computer (that subsequently crashed) using DAC EASY software. (*Id.* at 53:23-54:16). Plaintiffs then filed their initial complaint in May 2009. (Doc. 1).

Under Pennsylvania law, to determine the penalty for a spoliation of evidence claim, Defendant must show 1) the degree of fault of Plaintiff, 2) the degree of prejudice it has suffered, and 3) the availability of a lesser sanction that will protect Plaintiff's rights and deter future similar conduct. *Schroeder v. Commonwealth of Pa.*, 710 A.2d 23, 27 (Pa. 1998) (adopting the Third Circuit's approach in *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d

Cir. 1994) in design defect case). A finding of "bad faith" is not necessary to find fault. *Baliotis*, 870 F. Supp. at 1291.

Plaintiffs hired two experts who opined that Plaintiffs had lost over $2 million in equity value from their stores' closings. (Doc. 94, Ex. V – Dragotto-Rajan Report). In their report dated June 3, 2011, Dragotto and Rajan stated they relied primarily on the Defendant's projections of Plaintiffs' future sales growth to determine the present value of Plaintiffs' future cash flows. Mr. Dragotto also submitted a memorandum dated June 7, 2011 explaining his methodology. (Doc. 94, Ex. W). Past sales data (from April 1, 2006 to March 31, 2007) were culled from the combined tax records of Bruno's Market, Inc. and Bruno's Supermarket, Inc. (BSI) to form the basis of Defendant's 3% annual sales growth projections. Plaintiffs had owned BSI in West Pittston, but it was a losing concern, so to reduce payroll tax liability, the Brunos combined the tax returns of BSI with Bruno's Market. (Doc. 94, Ex. K, Affidavit of Joseph Patterson, at 50-51). They sold BSI to AWI in May 2006. So, when Plaintiffs' experts made their report, they took the combined tax returns and separated out the sales data of Bruno's Market, Inc. only. (Doc. 94, Ex. V). Defendant wishes to verify the sales and expense numbers that Plaintiffs' experts derived from the tax returns, because Defendant's expert witnesses submitted affidavits dated October 5, 2011, stating there is insufficient evidence for them to vet the Dragotto-Rajan Report. (Doc. 94, Exs. 31, 32).

Plaintiffs say they no longer possess this data in paper form, but it is available in electronic form on the RORC computer system owned by AWI. (Doc. 94, Ex. D, Affidavit of L. Bruno, at 43). They aver that during the course of discovery, they signed a release authorizing

Defendant to have access to all of their bank records and cancelled checks, (Doc. 105, Ex. D to Ex. F) as well as revealed that the electronic documents were in the possession of AWI. Of note, there is nothing on the record to show that AWI still possesses these documents. Defendant is correct that Plaintiffs had a duty to preserve evidence once litigation became likely, and this duty encompassed original paper records of sales transactions and intermediate accounting records. Plaintiffs cite no case law or other authority in their briefs under which a court would sanction the destruction of a certain form of evidence so long as it was still available in another form. FED. R. CIV. P. 26(b)(2)(C)(i) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.

*Id* (internal citations omitted). However, the Court does not construe this to mean that Defendant is obligated to subpoena AWI for the information it seeks and then re-create the lost records from the raw data it collects. Plaintiffs cannot throw the burden on a third party to meet Defendant's discovery demands. To do so would unduly burden Defendant, especially considering that Defendant and AWI are direct competitors and AWI is unlikely to accede to Defendant's discovery demands with any alacrity.

As far as degree of fault goes, Plaintiffs admit they destroyed all of their paper records. The Court is not attributing any malice or bad faith on their part, because they believed as long as the evidence was available in one form or another, it was permissible. (Doc. 94, Ex. D, Affidavit of L. Bruno, at 43). Even though Plaintiffs did not act in bad faith, they did destroy

original paper records that had been used to tally final sales figures, expenses, and net income. Defendant claims that without the paper records, it cannot adequately make out its three defenses of 1) pre-existing poor financial condition, 2) no profit in 2006, and 3) a competing expert report using independent numbers. (Doc. 109). Obviously, if the documents still exist in electronic form, then Defendant is not much prejudiced, even if it may have to re-create certain records from raw data. If they do not exist, Defendant will suffer a greater degree of prejudice. At the moment, assuming that AWI still possesses the requested data in electronic form, the Court will re-open discovery and order Plaintiffs to take such actions as are necessary to obtain the requested data from AWI and turn them over to Defendant. This directive includes, if necessary, the filing of a motion to compel in this case, or initiating a separate action to compel production. Plaintiffs will bear any and all costs associated with such transfer of information. If the requested data are no longer in AWI's possession, the Court will reconsider its ruling.

## III. Conclusion

For the reasons above, the Court will deny Defendant's Motion to Dismiss Bruno's Market II, Inc. as a Plaintiff (Doc. 64), grant Defendant's Motion to Dismiss Counts III, IV, and V of the SAC (Doc. 113), and grant in part and deny in part Defendant's Motion for Sanctions for Spoliation of Evidence (Doc. 94).

Robert D. Mariani
United States District Court Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BRUNO
LISA BRUNO, et al.,

        Plaintiffs

v.  :  3:09-CV-874
      (JUDGE MARIANI)
BOZZUTO'S, INC.,

        Defendant

## ORDER

AND NOW, TO WIT, THIS 6TH DAY OF FEBRUARY 2012, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss Bruno's Market II, Inc. (Doc. 64) is **DENIED**.

2. Defendant's Motion to Dismiss Counts III, IV, and V of Plaintiff's Second Amended Complaint (Doc. 113) is **GRANTED**.

3. Defendant's Motion for Sanctions (Doc. 94) is **GRANTED IN PART** and **DENIED IN PART**. Assuming such information still exists, Plaintiffs are directed to take such actions as are necessary to obtain original source materials from the RORC system in AWI's possession and to bear all costs associated with such retrieval. This directive includes, if necessary, the filing of a motion to compel in this case, or initiating a separate action to compel production. Plaintiffs will bear any and all costs associated

with such transfer of information. If the requested data are no longer in AWI's possession, the Court will reconsider its ruling.

4. Within **FOURTEEN (14) DAYS** of the date of this Order, Defendant shall file its Answer to the Second Amended Complaint.

Robert D. Mariani
United States District Court Judge